*1348 OPINION

Per Curiam:

Appellant James Morrow, a miner with thirty years experience, filed a claim with the State Industrial Insurance System (“SIIS”) alleging that he suffered from an occupational disease in his lower back. SIIS conducted a medical evaluation, and summarily denied Morrow’s claim.
After unsuccessfully appealing the denial of his claim to both the hearing officer and the appeals officer, who accorded Morrow a de novo hearing, Morrow filed a petition for judicial review in the district court. The district court denied Morrow’s petition and affirmed the decision of the appeals officer.
For reasons hereinafter discussed, we reverse and remand to the district court with instructions that the matter be remanded to the appeals officer by the district court for reconsideration based upon State Industrial Insurance System v. Kelly, 99 Nev. 774, 775-76, 671 P.2d 29, 30 (1983).

FACTS

Appellant James Morrow worked as an underground miner for numerous companies throughout the western United States for approximately thirty years. He spent the last five years of his underground mining career in Nevada, and the final eight months working for Asamera Minerals in a mine located between Reno and Fernley.
In addition to drilling and blasting, Morrow’s job responsibilities included timbering unstable ground, which required the lifting of large timbers having an average weight of 350 pounds. Additional duties included hauling track rail twenty feet in length and weighing 200 pounds. Morrow testified that he lifted timbers on a daily basis for thirty years. Throughout his career, Morrow intermittently sought chiropractic care to relieve his back strain; however, in July of 1991, during his tenure with Asamera Minerals, Morrow sought the medical advice of an orthopedist, Dr. Stephen Dow. Dr. Dow notified the Bureau of Vocational Rehabilitation that Morrow’s L5-S1 disc was herniated and identified the cause as “chronic occupational stress.” In May of 1992, shortly after receiving Dr. Dow’s work-related diagnosis, Morrow, through his counsel, filed a claim with SIIS. SIIS frequently relies on the date of diagnosis as the date of injury in *1349 occupational disease claims. Dr. Dow ultimately performed a surgical fusion at the L5-S1 level in October of 1992.
SIIS conducted a bifurcated medical evaluation by initially exploring the medical probability of an occupational disease causing Morrow’s condition, and then determining whether an isolated traumatic incident caused Morrow’s back problems. In considering Morrow’s lengthy history of back problems, SIIS’s medical advisor concluded that Morrow’s ailments did not arise “exclusively out of his work.” Further, the medical advisor failed to identify a specific traumatic incident, a condition potentially compensable under the Nevada Industrial Insurance Act. Based upon the medical advisor’s evaluation, SIIS denied Morrow’s claim.
Morrow appealed the denial of his claim to the hearing officer, who affirmed SIIS’s decision on grounds that the claim was untimely filed. Morrow thereafter sought review by the appeals officer.
In proceedings before the appeals officer, William M. Edwards, M.D., Chief Medical Advisor for SIIS, disagreed with Dr. Dow’s medical assessment that Morrow’s back problems were occupationally related. Despite never having examined Morrow, Dr. Edwards testified that it was medically unreasonable to characterize Morrow’s back problems as an occupational disease, and concluded that Morrow’s complaints were not job related. Dr. Edwards based his conclusions on his inability to ascribe an acute traumatic incident to Morrow’s condition, and the pervasiveness of degenerative back problems among the general population. On the issue of causation, upon further questioning by the appeals officer, Dr. Edwards conceded that Morrow’s occupation may have contributed to the condition of his back. Following an unsuccessful motion by SIIS to dismiss Morrow’s claim on the basis of an untimely filing, the appeals officer retained jurisdiction, deferred ruling on the substantive issue of causation, and remanded the case for an independent medical evaluation in order to determine whether a compensable claim existed.
The appeals officer directed that Dr. James Rappaport, of the Sierra Regional Spine Institute, review the medical records and make a recommendation as to whether a causal connection existed between Morrow’s back condition and his employment. Dr. Rappaport’s sole inquiry was confined to determining whether Morrow’s back problems were degenerative in nature and thus caused by any number of factors outside the scope of his employment, or whether Morrow’s employment constituted the source of his back problems.
Dr. Rappaport, after concluding that “an industrial accident *1350 did not occur in the case of Mr. James Morrow,” then addressed the question of whether SIIS should characterize Morrow’s degenerative disc disease as an occupational disease. Dr. Rappa-port’s findings were as follows:
It is medically probable that Mr. Morrow’s occupation as a miner contributed to his degenerative disc disease, however, it is not certain to a reasonable degree of medical probability that Mr. Morrow’s degenerative spine problem was caused by his occupation. Certainly, his degenerative disc disease was not caused by any one particular industrial accident.
(Emphasis added.)
After reviewing Dr. Rappaport’s diagnosis, the appeals officer affirmed SIIS’s denial of Morrow’s claim. Despite a finding of fact “[t]hat it is medically probable claimant’s occupation as a miner contributed to his degenerative disc disease,” the appeals officer made the following conclusion of law: “A preponderance of the medical evidence supports the proposition that it is not certain to a reasonable degree of medical probability that the claimant’s degenerative spine problem was cause [sic] by his occupation.”

DISCUSSION

The Administrative Procedures Act defines the standard of review of the judicial review of an agency’s final decision. The limitations upon court review are set forth under NRS 233B. 135.[1]
On questions of fact, neither this court nor the district court may substitute its judgment or view of the weight of the evidence *1351 for that of the administrative agency; therefore, a reviewing court must confine its inquiry to determining whether the record provides substantial evidence to support the administrative agency’s decision. Installation & Dismantle, Inc. v. SIIS, 110 Nev. 930, 932, 879 P.2d 58, 59 (1994); see also SIIS v. Swinney, 103 Nev. 17, 20, 731 P.2d 359, 361 (1987).
Court review is plenary concerning questions of law; however, “an agency’s conclusions of law, which are necessarily closely related to the agency’s view of facts, are entitled to deference and will not be disturbed if they are supported by substantial evidence.” See NRS 233B.135; SIIS v. Khweiss, 108 Nev. 123, 126, 825 P.2d 218, 219 (1992); Installation & Dismantle, 110 Nev. at 931-32, 879 P.2d at 58-59.
SIIS and the appeals officer applied their factual inquiries to the definition of occupational diseases as set forth in NRS 617.440.[2] Initially, SIIS conducted a medical investigation to determine the reliability of Dr. Dow’s assertion that Morrow’s back problems were occupationally related. As a result, SIIS concluded that Morrow’s ten-year history of back ailments, the failure to pinpoint any specific traumatic event, and the ubiquitous presence of back problems among the general population, made it medically unreasonable to categorize Morrow’s condition as an occupational disease.
In reviewing the record for substantial evidentiary support for the agency’s decision, we note that the record is flush with examples of conscientious attempts by the appeals officer to conduct a thorough medical inquiry concerning the nexus between Morrow’s health problems and his occupation. Indeed, *1352 the appeals officer’s quest for an unbiased medical evaluation was readily apparent.
For example, the appeals officer sought independent medical advice concerning the testimony of Dr. William Edwards, Chief Medical Advisor for SIIS. Dr. Edwards had discounted Dr. Dow’s opinion that Morrow’s back condition was “related to chronic occupational stress and the job situation that has required extensive repeated bending and lifting.” Noting the conflicting medical opinions and his own lack of medical expertise in resolving the conflict, the appeals officer wisely sought an independent medical review.
Accordingly, in view of the substantial evidence of record, the findings of fact must remain undisturbed; however, this court must still address issues of law that are essential to the proper disposition of this appeal. NRS 233B.135; State Dept. of Motor Vehicles & Public Safety v. Frangul, 110 Nev. 46, 48-49, 867 P.2d 397, 400 (1994).
Morrow failed to present evidence of an isolated traumatic event as the source of his complaints. Since the statutory definitions of “accident” and “injury” did not apply, Morrow was foreclosed from claiming industrial insurance benefits under NRS Chapter 616.[3] However, Morrow also sought relief under the provisions of the Nevada Occupational Diseases Act (“NODA”), NRS Chapter 617.
Morrow insists that he has a compensable occupational disease, and turns for support to the appeals officer’s factual finding “[tjhat it is medically probable claimant’s occupation as a miner contributed to his disease.”
Conversely, SIIS maintains that Morrow has failed to meet the four-prong test set forth under NRS 617.440.[4] Based upon Dr. Rappaport’s medical evaluation, SIIS urges that Morrow has not demonstrated by a preponderance of the evidence that his disability was causally related to his tenure at Asamera Minerals.
*1353 It is noteworthy that both parties accepted Dr. Rappaport as the independent medical examiner appointed by the appeals officer to resolve this medical “stalemate.” The record reveals that Dr. Rappaport’s methodology for resolving the issue of causation was thorough. We perceive no latitude in this court for concluding that the appeals officer’s considered evaluation of the medical evidence is not substantially supported in the record.
Morrow’s inability to pinpoint a specific traumatic event presented another formidable obstacle to the acceptance of his claim. Dr. Rappaport reported that “[c]urrent medical literature and understanding indicates that degenerative disc disease occurs as a multifactorial disease process.” Moreover, SIIS contends that given the current medical understanding of degenerative disc disease, Morrow has failed to satisfy the statutory requirements of NRS 617.440.[5] Thus, SIIS argues that Morrow has failed to establish that his disease is occupationally related.
In addition to challenging SIIS’s statutory application of NRS 617.440, Morrow also claims that SIIS’s interpretation of Desert Inn Casino & Hotel v. Moran, 106 Nev. 334, 792 P.2d 400 (1990), is equally flawed. Indeed, Morrow relied heavily on Desert Inn as support for the proposition that while his occupation did not cause his degenerative disc disease, it aggravated his preexisting condition, and is therefore compensable under Desert Inn.
The claimant in Desert Inn was a masseuse whose work required the inordinate use of her hands, and she eventually began to experience problems with her hands during the course of her employment. Moran’s medical diagnosis was considered occupationally related and her condition was “aggravated by overuse.” This court applied the four-prong test under NRS 617.440 to the facts adduced in Desert Inn and concluded that the demands of her work could be “fairly traced” as the proximate cause of her degenerating condition. Desert Inn, 106 Nev. at 337, 792 P.2d at 402. Accordingly, the Desert Inn court held that Moran had a compensable occupational disease pursuant to NRS 617.440. Desert Inn, 106 Nev. at 336, 792 P.2d at 402.
SIIS disputes Morrow’s claim because it “cannot be said to have been caused or aggravated by his employment.” SIIS notes that Dr. Rappaport concluded that “[i]t is medically probable that Mr. Morrow’s occupation as a miner contributed to his degenerative disc disease.” (Emphasis added.) Morrow insists that a semantic distinction between “contribute” and “aggravate” is illogical and that these two terms have the same connotation. Morrow contends that the term “contribute” is simply another *1354 way of stating that Morrow’s occupation aggravated his degenerative disc disease.
We are persuaded that the terms “contribute” and “aggravate” are not interchangeable. Webster’s Third New International Unabridged Dictionary (1968), defines “aggravate” as: “to make worse, more serious, or more severe.” “Contribute” is defined as “to bring together.” Thus, “to contribute” denotes a confluence — a flowing together of factors which would ultimately manifest themselves as the occupational disease. Conversely, to aggravate connotes a mechanism, environment or factor that operates to worsen or make more severe, a preexisting condition or disease.
In Desert Inn, this court held that a claimant may receive compensation where it is found that the occupation aggravates a preexisting condition. Desert Inn, 106 Nev. at 337, 792 P.2d at 402; see Christensen, 106 Nev. at 87-88, 787 P.2d at 409. In so holding, this court relied on a rule of law adopted by Arizona and articulated in State Industrial Insurance System v. Kelly, 99 Nev. 774, 775-76, 671 P.2d 29, 30 (1983).
We see in Kelly the basis for an appropriate disposition of the instant case. The rule of law in Kelly is directly on point: “The claimant has the burden of showing that the claimed disability or condition was in fact caused or triggered or contributed to by the industrial injury and not merely the result of the natural progression of the preexisting disease or condition.” Kelly, 99 Nev. at 775-76, 671 P.2d at 30 (citing Arrellano v. Indust. Comm., 545 P.2d 446, 452 (Ariz. 1976)) (emphasis added).
We have little difficulty in reading Kelly and NRS 617.440 harmoniously. Dr. Rappaport’s finding “[t]hat it is medically probable claimant’s occupation as a miner contributed to his degenerative disc disease,” provides a reasonable factual foundation for revisiting the evidence in light of Kelly and NRS 617.440.

CONCLUSION

For the reasons discussed above, we reverse the summary judgment entered below and remand with instructions that the district court remand this matter to the appeals officer to reconsider Morrow’s claim consistent with the dictates of this opinion.

NRS 233B.135 provides in pertinent part:
1. Judicial review of a final decision of an agency must be:
(b)Confined to the record.
2. The final decision of the agency shall be deemed reasonable and lawful until reversed or set aside in whole or in part by the court. The burden of proof is on the party attacking or resisting the decision to show that the final decision is invalid pursuant to subsection 3.
3. The court shall not substitute its judgment for that of the agency as to the weight of the evidence on a question of fact. The court may remand or affirm the final decision or set it aside in whole or in part if substantial rights of the petitioner have been prejudiced because the final decision of the agency is:
(a) In violation of constitutional or statutory provisions;
(b) In excess of the statutory authority of the agency;
(c) Made upon unlawful procedure;
(d) Affected by other error of law;
(e) Clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or
(f) Arbitrary or capricious or characterized by abuse of discretion.

NRS 617.440 provides in pertinent part:
617.440 Requirements for occupation disease to be deemed to arise out of and in course of employment.
1. An occupational disease defined in this chapter shall be deemed to arise out of and in the course of the employment if:
(a) There is a direct causal connection between the conditions under which the work is performed and the occupational disease;
(b) It can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment;
(c) It can be fairly traced to the employment as the proximate cause; and
(d) It does not come from a hazard to which workmen would have been equally exposed outside of the employment.
2. The disease must be incidental to the character of the business and not independent of the relation of the employer and employee.
3. The disease need not have been foreseen or expected, but after its contraction must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a natural consequence. . . .

NRS 616A.030 provides:
616A.030 “Accident” defined. “Accident” means an unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury (substituted in revision for NRS 616.020).
NRS 616A.265 provides in pertinent part:
616A.265 “Injury” and “personal injury” defined.
1. “Injury” or “personal injury” means a sudden and tangible happening of a traumatic nature, producing an immediate or prompt result which is established by medical evidence .... (substituted in revision for NRS 616.110).

See n.2.

See n.2.