## DONNA HORNE, Appellant, v. THE STATE INDUSTRIAL INSURANCE SYSTEM, Respondent.

No. 27033

April 24, 1997                      936 P.2d 839

*Karen Green-Lewis,* Las Vegas, for Appellant.

*Lenard T. Ormsby,* General Counsel, and *Arleen N. Kaizer,* Associate General Counsel, Carson City, for Respondent.

## OPINION

By the Court, YOUNG, J.:

On January 5, 1991, appellant Donna Horne ("Horne") was physically attacked by a man while she was employed as a security guard. She sustained injuries, and respondent State Industrial Insurance System ("SIIS") accepted her claim and paid her worker's compensation benefits.

In August 1991, Horne had what appeared to be an extreme attack of asthma for which she was hospitalized. She later went to a doctor who diagnosed her with a newly discovered disorder called Paradoxical Vocal Cord Dysfunction ("PVCD"). He believed this disorder resulted from her January 5, 1991 industrial injury.

Horne subsequently attempted to reopen her January 5, 1991 claim with SIIS, which denied her request. She appealed this decision to the hearing officer, who affirmed SIIS's decision to deny benefits. Horne then appealed to the appeals officer who overturned the hearing officer's decision and granted reopening of the claim. SIIS petitioned for judicial review to the district court, which reversed the appeals officer's decision on the grounds that there was insubstantial evidence of Horne's current condition or that it was causally connected to the January 5, 1991 injury. Horne now appeals to this court, alleging that the district court erred in reversing the appeals officer's decision.

Without substituting our judgment for that of the appeals officer, we conclude that the district court did not err in finding that there was not enough evidence to reopen Horne's January 5, 1991 claim. Accordingly, we affirm the district court's order reversing the appeals officer's decision.

### FACTS

In 1991, Horne was employed as a security guard and an emergency medical technician at the Dunes Hotel Complex in Las Vegas. On January 5, 1991, while patrolling her assigned area within the scope of her employment, Horne was attacked from behind by a man, who grabbed her by the face. The man snatched her radio out of her hand and hit her over the head with it. When Horne attempted to escape, the man grabbed her clothing and pulled her toward him until her head hit his chest. He ripped her shirt open. All the while, he was continually hitting her in the head with the radio. Shortly before she fell to the floor, he appropriated her weapon. He then started to kick her, while

she begged him to stop. The next thing she remembered was that the attack ended and the man was no longer present.

Horne's injuries consisted of headaches, swelling and bruising on her face and lower back, a "puffy" eye, and bruising on her legs and arms. The medical reports in January 1991 do not mention any neck injuries nor whether Horne was choked by her assailant. One report specifically noted that upon a January 8, 1991 examination of Horne, there was no neck pain upon palpation. However, Horne's voice became hoarse immediately after the attack, and she subsequently claimed that she also sustained neck injuries from the attack due to being choked.

Horne filed a worker's compensation claim with SIIS for her industrial injuries relating to the January 5, 1991 attack. SIIS accepted this claim and provided compensation.

Seven months later, in August 1991, Horne had an extreme attack of what appeared to be asthma,[1] whereupon she was admitted to the hospital. Horne filed a new claim with SIIS for this incident, which was denied because it was not industrially related. She then appealed this decision to the appeals officer; a hearing was conducted on March 24, 1992. Appeals officer Virginia Hunt upheld SIIS's denial because there was evidence that this episode was related to allergies and was, therefore, not industrially related.

Sometime thereafter, Horne was referred to Dr. Jim Christensen ("Dr. Christensen"), an allergy and clinical immunology specialist. He diagnosed her with PVCD, a newly discovered disorder often confused with asthma.[2]

In a March 2, 1993 letter addressed to "Whom It May Concern," Dr. Christensen stated, "It is entirely possible that there is a causal relationship between her traumatic injury to her neck and throat and the recrudescence of this vocal cord dysfunction."

In September 1992, based on Dr. Christensen's diagnosis of PVCD, Horne attempted to reopen the January 5, 1991 industrial injury claim. Horne later submitted Dr. Christensen's March 2, 1993 letter as evidence that her PVCD was causally connected to the January 5, 1991 industrial injury. On April 2, 1993, SIIS denied the request to reopen the claim, explaining that "the vocal cord [dysfunction] was not ever included in your industrial injury of January 5, 1991. Your industrial injury was caused to a blow in

---

[1]Horne had asthma for fifteen or sixteen years, but she had not been under a doctor's care for this condition since 1982.

[2]PVCD mimics attacks of bronchial asthma and is characterized by vocal cord closure, usually on inspiration, leading to air-flow obstruction, wheezing and, occasionally, stridor.

the back of your head. Therefore, the vocal cord dysfunction is Non-Industrially related."

On April 7, 1993, Horne appealed the denial of compensation to the hearing officer. On May 5, 1993, a hearing was held, and on May 6, 1993, the hearing officer affirmed SIIS's decision to deny compensation to Horne. The hearing officer determined that "[Horne] has failed to meet her burden of proof that the [PVCD] is causally related to the industrial injuries sustained on January 5, 1991."

Horne then appealed the hearing officer's decision to the appeals officer. On June 23, 1993, a hearing was conducted by Appeals Officer Virginia Hunt, the same officer who previously denied Horne's request to open a new claim for her August 1991 injury. At this hearing, Horne testified as to the January 5, 1991 industrially related injury and the August 1991 incident. She also testified as to Dr. Christensen's assessment of her condition. The only medical documentary evidence that Horne presented was Dr. Christensen's March 2, 1993 letter and a June 7, 1993 letter from Dr. Christensen to Horne's attorney, stating that he believed Horne's neck trauma was related to her PVCD. In addition, Horne's mother testified that Horne's voice became hoarse directly after the January 5, 1991 attack.

SIIS presented no witnesses nor conflicting medical evidence to dispute the existence of PVCD. SIIS did, however, supply two articles about PVCD in its attempt to demonstrate the weak medical evidence presented by Horne. SIIS also disputed that Horne even sustained a neck injury on January 5, 1991. "Your Honor, there's no documentation of any trauma to the neck. . . . We can't say any kind of trauma triggered this so-called disease that [Horne] has."

On August 6, 1993, the appeals officer's decision was filed, reversing the hearing officer's decision and granting Horne's request to reopen her January 5, 1991 claim to include her PVCD condition. The appeals officer specifically found as follows:

> (1) [Horne] has testified credibly to the worsening of her condition. [Horne] testified credibly to her symptomatology and events of the industrial accident.
>
> (2) Dr. Jim Christensen's medical documentation supplied a sufficient causal connection for acceptance of the additional injury of vocal cord dysfunction. Dr. Christensen also documented the necessary treatment available for [Horne].

On August 19, 1993, SIIS petitioned the district court for judicial review pursuant to NRS 233B.130 and based on all the

grounds enumerated in NRS 233B.135(3).[3] Specifically, SIIS argued that the record did not supply substantial evidence that Horne had PVCD or that this condition was causally connected to the January 5, 1991 industrial injury; therefore, the appeals officer's decision was arbitrary, capricious, and an abuse of discretion.

One year later, on August 4, 1994, the district court filed its decision and order reversing the appeals officer's decision. The lower court found that the administrative decision was "arbitrary and capricious and not based on substantial scientific/medical evidence." Specifically, the court stated that Dr. Christensen's letters,

> with only a statement of a [sic] unsubstantiated diagnosis, a medical possibility without scientific evidence to substantiate the diagnosis of [PVCD], does not fulfill the medical probability standard of *United Exposition Services v. SIIS, Keating,* in which our supreme court stated that "a possibility is not the same as a probability.". . . The letter submitted by [Horne] was not based on any scientific data nor was there any testing to establish that the diagnosis is a proven medical condition.

On September 8, 1994, Horne filed her notice of appeal.

### DISCUSSION

State Industrial Insurance System v. Hicks, 100 Nev. 567, 569, 688 P.2d 324, 325 (1984), held that the burden of proof to reopen an industrial compensation claim is on the party seeking to reopen the claim. This burden is subject to a preponderance of the evidence standard. *Id.*

In reviewing administrative decisions, this court's role is identical to that of the district court. United Exposition Service Co. v. SIIS, 109 Nev. 421, 423, 851 P.2d 423, 424 (1993). Both this court and the district court are limited to the record below in determining whether the appeals officer acted arbitrarily or capriciously, thus abusing her discretion. State, Emp. Sec. Dep't v.

---

[3]NRS 233B.135(3) allows the reviewing court to remand or set aside an administrative agency's decision if that decision is:

(a) In violation of constitutional or statutory provisions;
(b) In excess of the statutory authority of the agency;
(c) Made upon unlawful procedure;
(d) Affected by other error of law;
(e) Clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or
(f) Arbitrary or capricious or characterized by abuse of discretion.

Weber, 100 Nev. 121, 124, 676 P.2d 1318, 1320 (1984). There-fore, "[t]he question is whether the [appeals officer's] decision was based on substantial evidence." *Id.*; *see also* State, Emp. Sec. Dep't v. Hilton Hotels, 102 Nev. 606, 607, 729 P.2d 497, 498 (1986); NRS 233B.135(3)(e) and (f). This court accepts the definition of "substantial evidence" in the context of reviewing administrative decisions as "evidence which a reasonable mind might accept as adequate to support a conclusion." Schepcoff v. SIIS, 109 Nev. 322, 325, 849 P.2d 271, 273 (1993).

Finally, this court, like the district court, "shall not substitute its judgment for that of the agency as to the weight of the evidence on a question of fact." NRS 233B.135(3); *see also* State, Dep't of Mtr. Vehicles v. Becksted, 107 Nev. 456, 458, 813 P.2d 995, 996 (1991); McCracken v. Fancy, 98 Nev. 30, 30-31, 639 P.2d 552, 553 (1982).

For Horne to reopen her January 5, 1991 claim to receive benefits for her PVCD, she must prove that a causal relationship exists between the January 5, 1991 industrial injury and PVCD. NAC 616.576 provides:

> Where a physician initiates treatment for an injury or disease of an employee after the initial report of his injury or disease and where the medical history of the case does not mention the injury or disease for which the treatment is being initi-ated, *the physician must establish a firm causal connection* between the newly developed injury or disease and the original accident before the insurer may allow a fee for the treatment.

Further, this court held that a claimant to worker's compensa-tion benefits "has the burden of showing that the claimed disabil-ity or condition was in fact caused or triggered or contributed to by the industrial injury . . . ." State Industrial Insurance System v. Kelly, 99 Nev. 774, 775-76, 671 P.2d 29, 30 (1983); *see also United Exposition,* 109 Nev. at 424, 851 P.2d at 425. Therefore, Horne had the burden of proof of presenting substantial evidence to demonstrate a causal connection between her PVCD and the January 5, 1991 industrial injury.

This court stated that the standard for finding a medical causal connection is as follows:

> An award of compensation cannot be based solely upon possibilities and speculative testimony. A testifying physi-cian must state to *a degree of reasonable medical probability* that the condition in question was caused by the industrial injury, or sufficient facts must be shown so that the trier of

fact can make the reasonable conclusion that the condition was caused by the industrial injury.

*United Exposition,* 109 Nev. at 424-25, 851 P.2d at 425 (emphasis added).

In *United Exposition,* like the case at hand, the claimant relied solely upon a letter from his physician to establish the requisite causation. This letter stated, "It is my belief that the accident (work-related) *possibly could have* been the precipitating factor in [the claimant's] illness." *Id.* at 424, 851 P.2d at 425 (emphasis added). This court held that a possibility is not the same as a probability and, therefore, the speculative nature of the doctor's opinion regarding causation did not support the appeals officer's determination that the claimant's current condition was industrially related.[4] *Id.* at 425, 851 P.2d at 425.

Here, Horne attempted to establish the requisite "firm causal relationship" with two letters from Dr. Christensen. The March 2, 1993 letter states, "It is entirely *possible* that there is a causal relationship between her traumatic injury to her neck and throat and the recrudescence of this vocal cord dysfunction." (Emphasis added.) The June 7, 1993 letter states only that he *believes* Horne's neck trauma was related to her PVCD.[5] This was the

---

[4]This court's holding in United Exposition Service Co. v. SIIS, 109 Nev. 421, 851 P.2d 423 (1993), is consistent with the "tendency to reject mere statements of possibility and to insist on something more definitive." 2B Arthur Larson & Lex K. Larson, *The Law of Workmen's Compensation,* § 79.54(i) (1996). It is also consistent with other jurisdictions' standards of causal connection. For example, in Miller v. Staton, 365 P.2d 333, 337 (Wash. 1961), the Washington Supreme Court held:

The causal relationship of an accident or injury to a resulting physical condition must be established by medical testimony beyond speculation and conjecture. The evidence must be more than that the accident "might have," "may have," "could have," or "possibly did," cause the physical condition. It must rise to the degree of proof that the resulting condition was *probably* caused by the accident, or that the resulting condition more likely than not resulted from the accident, to establish a causal relation.

(Emphasis added.); *see also* Carlos v. Cain, 481 P.2d 945, 947 (Wash. Ct. App. 1971) (affirming the trial court's decision that no causal connection was established when the cause of the claimant's current condition was unknown, could have many causes, and the claimant's doctor could not say with "reasonable medical certainty" that the condition was caused by claimant's industrial accident).

[5]We note that none of the medical reports from Horne's January 5, 1991 criminal attack mention any neck or throat injury. Our dissenting colleague indicates that from "[his] reading of the record, it is clear that the assault caused the neck and throat injuries that are the subject of this opinion." With all due respect, we do not understand how his review of the record differs so drastically from ours.

only evidence of causal connection to the January 5, 1991 industrial injury. Unlike our dissenting colleague, we conclude that Dr. Christensen's mere speculation and belief does not rise to the level of "reasonable medical probability" of a "firm causal connection." *See id.* at 424-25, 851 P.2d at 425; NAC 616.576.

As just discussed, "mere possibility" is not sufficient to establish medical causation. Consequently, we hold that substantial evidence of the causal relationship between Horne's PVCD and her January 5, 1991 injury was not proved. Accordingly, the appeals officer erred in ordering the January 5, 1991 industrial claim reopened to provide benefits to Horne for PVCD. Therefore, we affirm the district court's order reversing the appeals officer's decision.

SHEARING, C. J., and MAUPIN, J., concur.

SPRINGER, J., with whom ROSE, J., agrees, dissenting:

The claimant in this case has presented a weak but still supportable claim for compensation. The record contains medical evidence that the beating suffered by Ms. Horne was "related to" her disability. For me this is enough.

The claimant's attorney submitted in support of Ms. Horne's claim only two hearsay letters, both from Ms. Horne's doctor, Jim Christensen, M.D., one dated March 2, 1993, the other, June 7, 1993. The March 2 letter from Dr. Christensen states only that it is "entirely possible that there is a causal relationship between her traumatic injury to her neck and throat and the recrudescence of the vocal cord dysfunction." This letter is totally useless on its face and should not have been submitted. I agree with the majority opinion that compensation "cannot be based solely upon possibilities and speculative testimony." The June 7 letter from Dr. Christensen (in which the doctor says that the injury is related to the disability) is also problematic; but, in my view, it is sufficient to support Ms. Horne's claim.

I trace the denial of Ms. Horne's claim entirely to the slip-shod manner in which her attorney submitted the claim. It appears to me that Dr. Christensen was in a position to establish the probability that Ms. Horne's "vocal cord dysfunction"[1] was caused by her work-connected throat injury. It would not have been much trouble for counsel to have submitted a physician's affidavit stating that it was medically probable that the injury caused the throat and neck condition. As matters stand, the only basis for granting the claim must be found in Dr. Christensen's letter of

---

[1]The injury in this case was incurred during the course of a vicious criminal assault, and from my reading of the record, it is clear that the assault caused the neck and throat injuries that are the subject of this opinion.

June 7, 1993, in which he states that he "believe[s] that her neck trauma is related to her vocal cord dysfunction." There is little excuse for counsel to have submitted such a statement as the only support for this claim. I can understand why the majority would reject this letter as proof of causation; but, as I have said, I would allow the claim, based on the doctor's statement of opinion or belief.

I would give a liberal construction to Dr. Christensen's opinion that he believes the trauma "is related to" Ms. Horne's present condition and accept it as being sufficient to establish a causal relationship. If a doctor were to say a patient's abdominal pain was "related to" an inflamed appendix, I think that I would understand that the pain was *caused by* appendicitis. In my view, the majority is being hypercritical when it rules, as a matter of law, that "related to" does not mean "caused by" in the present context. It is for this reason that I dissent.