**136 Nev., Advance Opinion 25**

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

CITY OF HENDERSON; AND CANNON COCHRAN MANAGEMENT SERVICES, INC.,
Appellants,
vs.
JARED SPANGLER,
Respondent.

No. 76295-COA

FILED

MAY 14 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

Appeal from a district court order granting a petition for judicial review and reversing a denial of workers' compensation benefits. Eighth Judicial District Court, Clark County; Richard Scotti, Judge.

*Affirmed and remanded.*

Lewis Brisbois Bisgaard & Smith LLP and Daniel L. Schwartz and Joel P. Reeves, Las Vegas,
for Appellants.

Greenman Goldberg Raby & Martinez and Lisa M. Anderson and Thaddeus J. Yurek, III, Las Vegas,
for Respondent.

BEFORE GIBBONS, C.J., TAO and BULLA, JJ.

## OPINION

By the Court, TAO, J.:

Statistics tell us that most police officers will never be required to draw, much less fire, their service weapon in the line of duty. But even when they don't, they still perform a difficult and hazardous job by merely

20-18325

being present at the scene of danger. This appeal involves a police officer who suffered progressive hearing loss that he believes to have been caused, at least in part, by his job. It's a risk that many officers might eventually suffer, for even on the best of days the typical police officer is exposed to a variety of noises that the rest of us might never experience, from such things as sirens, radio earpieces, shouted commands, and the sound of gunfire—maybe not from the rare occasion of having to draw a weapon against a suspect, but much more routinely by being required to regularly qualify on the shooting range.

This is a workers' compensation appeal. Jared Spangler served as a police officer for the City of Henderson since 2003 and over that time lost much of his hearing, to the point where he was assigned to desk duty. He sought compensation under NRS 617.430 and .440, which entitle employees, including but not limited to police officers, to workers' compensation benefits if they suffer a disability caused by an "occupational disease." The complicating factor in this appeal is that Spangler already had some level of hearing loss, perhaps genetically induced, before he began his service that his years on the job potentially made worse. Because at least part of his current hearing disability was attributable to that original pre-employment loss, the appeals officer denied benefits to Spangler. But NRS 617.366(1) provides that benefits are due when an employee's current condition results from an original condition that preexisted the job that was aggravated or accelerated by an occupational disease contracted from the job. We conclude that the plain text of this statute does not exclude the possibility of benefits under those circumstances, so long as the other requirements set forth in the statute are satisfied. We therefore affirm the

order of the district court reversing the appeals officer and remand this matter for further consideration.

## FACTUAL AND PROCEDURAL HISTORY

In 2005, while working as a police officer for the City of Henderson, Jared Spangler sought workers' compensation benefits, alleging that exposure to various loud noises while on patrol caused ringing in his ears and simultaneous hearing loss. Spangler was examined by Dr. Scott Manthei, who concluded that Spangler's hearing loss was not work related and that a nonindustrial cause (perhaps of genetic origin) was behind his symptoms. The City, through its third-party workers' compensation administrator, denied Spangler's claim based on Dr. Manthei's report. Spangler did not appeal that denial, so that claim is closed and cannot now be revisited.

Still experiencing significant decreased hearing 11 years later, in 2016 Spangler consulted Dr. Amanda Blake, who opined that Spangler's exposure to various work-related sounds—including police sirens, gunfire during range qualifications, and radio chatter from his left ear piece as well as his lapel microphone—caused the increased hearing loss, which she opined was an industrial condition. After this consultation, Spangler filed a second workers' compensation claim alleging that cumulative exposure to loud noise in different work environments over the years all combined to worsen his hearing even more than when he filed his 2006 claim. He also consulted Dr. Roger Theobald to determine the cause of his increased hearing loss, but Dr. Theobald could not conclusively attribute the loss to either Spangler's underlying nonindustrial cause or his work environment. Ultimately, the administrator denied Spangler's second claim because he failed to establish that his increased hearing loss arose out of his employment.

Spangler appealed and, in preparation for his administrative appeal hearing, sought out a third doctor, Dr. Steven Becker, who opined that Spangler's bilateral hearing loss and tinnitus were not work related, but that his work environment was a contributory factor in his increased hearing loss. The appeals officer affirmed the denial, claiming that Spangler failed to establish either an "injury by accident" or an occupational disease that would entitle him to benefits. Spangler then petitioned the district court for judicial review of the appeals officer's decision. The district court granted the petition and reversed. The City and its third-party administrator now appeal from the district court order.

## ANALYSIS

On appeal, the City argues that (1) the appeals officer did not err in interpreting NRS 616A.030's definition of "accident"; (2) the appeals officer's decision under NRS 616C.175(1) is supported by substantial evidence, as Spangler did not establish an "injury by accident"; and (3) the appeals officer's decision under NRS 617.440 is supported by substantial evidence because Spangler's hearing loss is not a compensable occupational disease.

### Standard of review

On appeal, this court's role in reviewing an administrative agency's decision in a workers' compensation matter is identical to that of the district court. *Elizondo v. Hood Mach., Inc.*, 129 Nev. 780, 784, 312 P.3d 479, 482 (2013). We do not defer to the district court's decision when reviewing an order deciding a petition for judicial review. *Id.* Instead, we examine the administrative agency's "fact-based conclusions of law" for clear error or an abuse of discretion, and we will not disturb them if supported by substantial evidence. *Grover C. Dils Med. Ctr. v. Menditto*, 121 Nev. 278, 283, 112 P.3d 1093, 1097 (2005). "Substantial evidence" is

defined as "evidence which a reasonable mind might accept as adequate to support a conclusion," regardless of whether we ourselves would reach the same conclusion had we been in the appeals officer's place. *Horne v. State Indus. Ins. Sys.*, 113 Nev. 532, 537, 936 P.2d 839, 842 (1997) (internal quotation marks omitted). We will not reweigh the evidence or substitute our judgment for that of the appeals officer on a question of fact. *Id.* However, we review de novo an administrative agency's conclusions of law, including its interpretation of the relevant statutes. *Star Ins. Co. v. Neighbors*, 122 Nev. 773, 776, 138 P.3d 507, 509-10 (2006).

Broadly speaking, employees may seek workers' compensation benefits for two types of work-induced conditions. An employee may seek compensation for a work-related "injury" under the provisions of NRS Chapters 616A-D, or an employee may seek compensation for an "occupational disease" under the provisions of NRS Chapter 617.

*Whether Spangler's hearing loss constitutes a compensable "injury by accident" under NRS Chapters 616A-D*

We first address whether Spangler's claim satisfies NRS Chapters 616A-D. Spangler may only recover under these statutes if he suffered an "injury," defined in NRS 616A.265 as "a sudden and tangible happening of a traumatic nature, producing an immediate and prompt result." Moreover, he may only recover compensation for such injuries if they resulted from an "accident," defined as "an unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." NRS 616A.030. The words of this latter statute are plain and unambiguous, so we must follow them as written. *Poole v. Nev. Auto Dealership Invs., LLC*, 135 Nev. 280, 283, 449 P.3d 479, 482 (Ct. App. 2019). According to the Nevada Supreme Court, these words mean exactly what they say: that "[i]n order

for an incident to qualify as an accident, the claimant must show the following elements: (1) an unexpected or unforeseen event; (2) happening suddenly and violently; and (3) producing at the time ... objective symptoms of injury." *Bullock v. Pinnacle Risk Mgmt.*, 113 Nev. 1385, 1389, 951 P.2d 1036, 1039 (1997).

Spangler's increased hearing loss does not fall within this statutory definition because he cannot identify a single incident which caused hearing loss at the moment it happened, but rather, he only alleges that his hearing worsened gradually and progressively over time, unrelated to any single sudden incident or even a series of sudden incidents. Even if he could tie his hearing loss retrospectively to any such single accident, he does not allege that his symptoms appeared immediately thereafter. The reports of all three physicians whose opinions were presented to the appeals officer (Dr. Blake, Dr. Theobald, and Dr. Becker) agree that Spangler's increased hearing loss and tinnitus resulted from accumulated exposure over time and not from any single sudden and violent incident which immediately induced injury at that moment. Consequently, we must conclude that substantial evidence supports the decision of the appeals officer that Spangler could not establish an "injury by accident" and he cannot recover under NRS Chapters 616A-D.

*Whether Spangler's hearing loss constitutes a compensable "occupational disease" under NRS Chapter 617*

The more complex question in this case is whether Spangler's hearing loss qualifies as a compensable "occupational disease" under NRS 617.440. NRS Chapter 617 provides benefits to employees who either die or suffer a "disability," whether temporary or permanent and whether total or partial, from an occupational disease. *See* NRS 617.430. NRS 617.440 lists the requirements for determining whether an employee's physical state

could be an occupational disease eligible for compensation. When an employee attempts to establish that his or her disease arose out of employment and is thus compensable, the employee "must show, with medical testimony, that it is more probable than not that the occupational environment was the cause of the acquired disease." *Seaman v. McKesson Corp.*, 109 Nev. 8, 10, 846 P.2d 280, 282 (1993). An employee is not entitled to compensation from the mere contraction of an occupational disease, but rather must show "a disablement resulting from such a disease." *Employers Ins. Co. of Nev. v. Daniels*, 122 Nev. 1009, 1014, 145 P.3d 1024, 1027 (2006) (quoting *Prescott v. United States*, 523 F. Supp. 918, 927 (D. Nev. 1981)).

Here, Spangler alleges that he originally suffered from hearing loss (possibly of genetic origin) that preexisted his employment, but that his employment then made his hearing much worse to the point where he could no longer serve in the field and has been limited to desk duty. Thus, he alleges that NRS 617.440 covers his current disablement due to hearing loss even though part of the loss may have preexisted his employment.

*The meaning of "preexisting"*

Before we can compare Spangler's allegations and evidence to the requirements set forth in the statute, we must clarify some terminology. In its jurisprudence over the past two decades, the Nevada Supreme Court has at times used the phrase "preexisting" to mean two very different things, only one of which relates to claims like Spangler's. On the one hand, when dealing with certain types of claims, the court has used the term to refer to physical symptoms or a physical state that did not exist before the employee began working and only developed for the first time during the employment, but for which the employee never previously sought benefits before filing a claim much later. In this usage, the court has sometimes said that the symptoms "preexisted" the current claim for benefits even though

they did not necessarily preexist the employment itself. An example of this is *Morrow v. Asamera Minerals*, 112 Nev. 1347, 929 P.2d 959 (1996), which broadly states that "a claimant may receive compensation where it is found that the occupation aggravates a preexisting condition." *Id.* at 1354, 929 P.2d at 964 (citing *Desert Inn Casino & Hotel v. Moran*, 106 Nev. 334, 337, 792 P.2d 400, 402 (1990)). *Morrow* involved a miner who suffered work-incurred back problems that became progressively worse over the course of the 30 years during which he continued to work as a miner. *Id.* at 1348, 929 P.2d at 960. He sought compensation not for the original disease (even though it arose after he began working as a miner), but only for the aggravation of it over time. *See id.* at 1348-49, 929 P.2d at 960. The supreme court held his claim to state a compensable condition. *Id.* at 1354, 929 P.2d at 964.

Thus, *Morrow* actually addressed a scenario very different from Spangler's claim: *Morrow* involved a physical manifestation that did not exist before the job but did worsen over the course of employment, while Spangler's claim seeks compensation for hearing loss of possible genetic origin that was not originally incurred while working but rather pre-dated his employment to some extent and then worsened over the course of his employment. As used in *Morrow*, the term "preexisting" refers not to something that existed before employment ever began, but only to something that first developed on the job but for which no previous claim was made; it "preexisted" the current claim but not the employment itself.

A number of other cases use the term in this same way. *See Desert Inn*, 106 Nev. at 337, 729 P.2d at 402 (stating that it implicitly used the term in this manner in *State Industrial Insurance System v. Christensen*, 106 Nev. 85, 88, 787 P.2d 408, 409-10 (1990)). *Desert Inn*

involved a masseuse who entered into her employment with no preexisting genetic disease or injury but then developed hand issues on the job that worsened over the course of employment. 106 Nev. at 335, 792 P.2d at 401-02. The court specifically noted that her "degenerative joint disease qualifies as an occupational disease which arose out of and in the course of her employment," and then "[a]s she continued her employment, her problems worsened." *Id.* at 337, 792 P.2d at 402. She never filed a claim at the time of initial onset of the disease but only after its aggravation, and the court concluded that she was entitled to compensation for her occupational disease under NRS 617.440. *Id.* Thus, like *Morrow*, *Desert Inn* uses the word "preexisting" not to mean that her disease existed before she started working, but only to mean that it developed on the job before she filed her later claim seeking compensation for its aggravation over time.

*State Industrial Insurance System v. Christensen* is much like *Morrow* and *Desert Inn*, involving a claim for an occupational disease that only developed on the job and did not exist before employment. 106 Nev. at 86, 787 P.2d at 408. A welder and steamfitter who worked for 40 years discovered he had developed asbestosis from on-the-job exposure. *Id.* at 86, 787 P.2d at 408-09. He was originally diagnosed in 1978 but did not file a claim at that time, only seeking compensation years later in 1985 after his symptoms worsened to the point where he became unable to work. *Id.* at 86-87, 787 P.2d at 409. The court found that he had stated a proper claim for compensation for an occupational disease based upon the aggravation of his asbestosis and remanded the matter for further fact-finding. *Id.* at 88, 787 P.2d at 409-10.

But on the other hand, with other types of claims the term "preexisting" means something else entirely, namely, a disease or symptom

that preexisted not merely the current claim, but the employment itself. The clearest example of this lies in NRS 617.366, a statute that neither party cites in their briefing but which appears to actually govern Spangler's claim. NRS 617.366 states as follows:

> 1. The resulting condition of an employee who:
>
> (a) Has a preexisting condition from a cause or origin that did not arise out of and in the course of the employee's current or past employment; and
>
> (b) Subsequently contracts an occupational disease which aggravates, precipitates or accelerates the preexisting condition,
>
> shall be deemed to be an occupational disease that is compensable pursuant to the provisions of chapters 616A to 617, inclusive, of NRS, unless the insurer can prove by a preponderance of the evidence that the occupational disease is not a substantial contributing cause of the resulting condition.
>
> 2. The resulting condition of an employee who:
>
> (a) Contracts an occupational disease; and
>
> (b) Subsequently aggravates, precipitates or accelerates the occupational disease in a manner that does not arise out of and in the course of his or her employment,
>
> shall be deemed to be an occupational disease that is compensable pursuant to the provisions of chapters 616A to 617, inclusive, of NRS, unless the insurer can prove by a preponderance of the evidence that the occupational disease is not a substantial contributing cause of the resulting condition.

Section 1 of this statute addresses an aggravation of a "condition" that preexisted the employment itself, not one that merely preexisted the claim. Under it, such an aggravation is not compensable unless an occupational disease is also independently established. *Garcia v. Scolari's Food & Drug*, 125 Nev. 48, 51, 200 P.3d 514, 517 (2009). Thus, NRS 617.366(1) uses the

COURT OF APPEALS
OF
NEVADA

(O) 1947B

phrase "preexisting" in the same sense that Spangler uses it, which is not the sense in which *Morrow*, *Desert Inn*, and *Christensen* use it. Consequently, Spangler's claim is best resolved under NRS 617.366 rather than *Morrow*, *Desert Inn*, and *Christensen.*

To sum up, the statutory scheme contemplates claims arising from four discrete types of "preexisting" conditions that are all handled differently: (1) an employee who develops an occupational disease for the first time on the job that becomes further aggravated over the course of the employment, even when the initial onset of the disease "preexisted" the final condition that gave rise to the claim for compensation, a scenario governed by *Morrow*, *Desert Inn*, and *Christensen*; (2) an employee who entered a job with a disease that preexisted the employment and was subsequently aggravated by an industrial accident causing "sudden injury" that made the original disease worse, a scenario governed by NRS Chapters 616A-D; (3) an employee who initially entered the employment with a "condition" that preexisted the employment itself and was subsequently aggravated, precipitated, or accelerated by the onset of an "occupational disease" that the employee first contracted while working, a scenario governed by NRS 617.366(1); and (4) an employee who contracted an occupational disease and suffered the nonindustrial aggravation of that occupational disease, a scenario governed by NRS 617.366(2). Of these four, Spangler's claim falls under NRS 617.366(1), as he claims to have entered employment with a condition that partially preexisted the employment and may have worsened over time by itself, but whose course was aggravated or accelerated by an occupational disease.

*The meaning of "condition" and "occupational disease" within the statutes*

Spangler's claim thus must be analyzed under NRS 617.366(1): he entered employment with hearing loss that preexisted the job and that he alleges was made worse by his work conditions. The question before us is whether his evidence meets the requirements of the statute. However, attempting to apply NRS 617.366(1) to his claim poses another terminology problem: the statute contains important terms that are not defined anywhere in the statute, namely, "condition" and "occupational disease." The plain language of the statute quite clearly assumes that there exists a meaningful difference between the two things (awarding compensation when a "condition" is aggravated by an "occupational disease"), yet does not define the two in any independent way.

Workers' compensation law is entirely a creation of statute with no historical roots or tradition anywhere in common law. Quite to the contrary, it represents a clear legislative departure from ancient and established common-law principles of liability. *See* Richard A. Epstein, *The Historical Origins and Economic Structure of Workers' Compensation Law*, 16 Ga. L. Rev. 775, 787-89 (1982). Consequently, we must apply the statute faithfully as written, with no power to change or rewrite the statutory mandates. "It is the prerogative of the Legislature, not this court, to change or rewrite a statute." *Holiday Ret. Corp. v. State, Div. of Indus. Relations*, 128 Nev. 150, 154, 274 P.3d 759, 761 (2012). Nor can we ignore statutes or apply them selectively: "[w]hen a statute is clear, unambiguous, not in conflict with other statutes and is constitutional, the judicial branch may not refuse to enforce the statute on public policy grounds. That decision is within the sole purview of the legislative branch." *Beazer Homes*, 120 Nev. at 578 n.4, 97 P.3d at 1134 n.4; *see City of Las Vegas v. Eighth Judicial Dist.*

COURT OF APPEALS
OF
NEVADA

(O) 1947B

12

*Court*, 118 Nev. 859, 867, 59 P.3d 477, 483 (2002) (invalidating vague statute because, to enforce it, "this court would have to engage in judicial legislation and rewrite the statute substantially"), *abrogated on other grounds by State v. Castaneda*, 126 Nev. 478, 482 n.1, 245 P.3d 550, 553 n.1 (2010). Emphatically, our goal is not to rewrite the statute into one that we think might work better than the one the Legislature actually drafted and voted upon and that the Governor signed. Doing so would risk amending legislation outside the "single, finely wrought and exhaustively considered, procedure" the Constitution commands. *INS v. Chadha*, 462 U.S. 919, 951 (1983). We would risk, too, upsetting reliance interests in the settled and established meaning of a statute. *Cf.* 2B Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 56A:3 (rev. 7th ed. 2012).

As applied to this case, Spangler may recover compensation if he had a "preexisting condition" that was aggravated or accelerated by an "occupational disease" he later contracted on the job. We know that Spangler came to the job with some pre-employment hearing loss of possible genetic origin, and then as a police officer was exposed to loud noises that made the hearing loss worse. Did he originally suffer from a preexisting "condition" that was aggravated by "occupational disease"? That depends upon whether his original pre-employment hearing loss was a "condition" or something else under NRS 617.366. It then further depends upon whether his exposure to loud noises on the job resulted in his contracting an "occupational disease" that aggravated his original hearing loss, or rather was merely a job-related aggravation of his original hearing loss that did not rise to the level of an "occupational disease."

In this case, however, we need not dive too deeply into the statutory text, as neither party disputes that the current state of Spangler's

hearing loss was the kind of thing theoretically eligible for compensation as an occupational disease. In their briefing below and on appeal, both parties agreed that his current hearing loss could potentially qualify as an occupational disease but disagreed regarding whether sufficient evidence supported the appeals officer's conclusion that the current state of his hearing loss was not sufficiently connected to his employment under NRS 617.440. Thus, we must conclude that Spangler's claim was of a kind eligible for compensation under NRS 617.366 when he alleges that he suffered from a condition that preexisted his employment and whose course was aggravated or accelerated by the onset of an occupational disease that he contracted from the job.

*The appeals officer's findings of fact and conclusions of law*

The next step of the inquiry is to assess whether the appeals officer's denial of Spangler's claim was justified in light of the evidence presented below. Dr. Theobald opined that "there is a high likelihood that there is an underlying condition that may be contributing to Mr. Spangler's hearing loss," but also opined in the very next sentence that "there is a high probability that Mr. Spangler's threshold shift may be as a result of on the job noise exposure." Similarly, Dr. Blake opined that Spangler lost some hearing before becoming a police officer but that he also suffered further loss due to noise exposure. Dr. Becker opined that Spangler's condition was originally not work related, but he also noted that the hearing loss became "steadily" worse over the course of Spangler's employment. Thus, every physician opined that Spangler's hearing loss had some preexisting component that was made substantially worse by his employment over the years.

In weighing these medical reports, the appeals officer found that Spangler had not met his burden of proof, "especially given the prior 2006 claim denial and the intervening primarily desk job assignment." The appeals officer sets forth no other factual findings supporting his conclusion. Fairly read, the appeals officer seems to mean that in 2006, Spangler was found to have had some combination of preexisting hearing loss coupled with some job-related exposure to loud noises that resulted in the denial of his 2006 claim, and that his job-related exposure to noise was reduced after he was later assigned to a desk job. Putting these together logically, the conclusion appears to be that Spangler has not met his burden of proof because he failed to prove that the current level of his hearing loss was entirely attributable to his employment.

But the appeals officer incorrectly interpreted NRS 617.440, which draws no distinction between conditions that originated wholly on the job and those that previously existed in some form before the job but were made worse by an occupational disease incurred on the job. The appeals officer also ignored NRS 617.336(1), which goes beyond NRS 617.440 to specifically provide for compensation when a condition that preexisted the job was aggravated, precipitated, or accelerated by the contraction of an occupational disease. Under the plain words of these statutes, Spangler would be entitled to compensation if he can prove that the current level of his hearing loss resulted from some combination of a preexisting condition that was made worse by an occupational disease that he subsequently contracted on the job. Contrary to the appeals officer's conclusion, the statutes do not permit denial of compensation solely on the grounds that some of Spangler's current level of hearing loss preexisted his employment. They only permit denial when either (1) his current level of

hearing loss resulted wholly from the original preexisting condition alone and would have naturally progressed to be exactly the same today even if he had never held the job of police officer for a single day, or (2) his original pre-employment hearing loss worsened over the course of his employment but not because of any "occupational disease."

This interpretation is not only mandated by the text, but is also consistent with the "last injurious exposure rule" set forth in *Grover C. Dils Medical Center v. Menditto*, 121 Nev. 278, 284, 112 P.3d 1093, 1097-98 (2005). It can even be said to be something of an analogy to or extension of the "last injurious exposure rule." Under that rule, if an injured employee has worked for different employers and alleges that he or she suffered various injuries or aggravations of injuries under each, the responsibility to pay workers' compensation falls upon the liability carrier for the employer at the time of the injury. A new injury or a new aggravation of a prior injury is the responsibility of the most recent employer, but a mere recurrence of a previous injury suffered under a former employer is the responsibility of the former employer. *Id.* at 284, 112 P.3d at 1098. A new injury or new aggravation must amount to "more than merely the result of the natural progression of the [original or prior] disease or condition." *Id.* at 287, 112 P.3d at 1099. In a sense, NRS 617.366 can be said to apply this rule to situations in which the employee had no prior employment under which he or she either originally incurred or aggravated the condition. In those situations, even if the condition was originally genetically inherited and always present since birth in some limited form, after later becoming employed, the employee may nonetheless be entitled to compensation if his or her current employment triggered an occupational disease that aggravated the original condition beyond its natural progression. On the

other hand, if the current state of the condition is nothing more than a mere recurrence of the same condition that was always present and does not constitute a new aggravation of it beyond its the natural progression without the employment, then no compensation is due.

Here, the appeals officer's decision is brief and therefore not entirely clear, but one reasonable interpretation of it (and perhaps the most reasonable interpretation of it) is that it appears to deny compensation solely because some, even though not all, of Spangler's hearing loss was partially attributable to a condition that preexisted his employment rather than being entirely the product of an occupational disease. If that is what the decision meant to say, it is legally incorrect. Had the appeals officer made clearer factual findings more consistent with the statutes, we would be required to defer to them, as we "shall not substitute [our] judgment for that of the agency as to the weight of evidence on a question of fact." NRS 233B.135(3). But based upon the factual findings we have, the most natural interpretation of them is that the appeals officer applied the statutes incorrectly as a matter of law.

## CONCLUSION

Because the appeals officer appeared to have improperly applied NRS 617.366 to the evidence before it, we remand this matter for further proceedings consistent with this opinion. We therefore affirm the district court's order granting Spangler's petition for judicial review, but on different grounds than those set forth by the district court, and remand with

instructions that the district court refer the matter back to the appeals officer for further proceedings as noted herein.

_____ , J.
Tao

We concur:

_____ , C.J.
Gibbons

_____ , J.
Bulla

COURT OF APPEALS
OF
NEVADA

(O) 1947B