971 P.2d 1257 (1998)
Edna HAYES, Appellant,
v.
The STATE INDUSTRIAL INSURANCE SYSTEM, n/k/a Employers Insurance Company of Nevada, Respondent.
No. 29965.
Supreme Court of Nevada.
December 30, 1998.
*1258 Nancyann Leeder, Nevada Attorney for Injured Workers and Peter J. Sferrazza, Deputy, Carson City, for Appellant.
Lenard Ormsby, General Counsel and John R. McGlamery, Associate General Counsel, State Industrial Insurance System, Carson City, for Respondent.

OPINION
SPRINGER, C.J.
The district court granted judicial review and reversed the decision of an administrative appeals officer who granted appellant Edna Hayes' industrial compensation claim. Ms. Hayes sought treatment of her right knee for pain and other physical problems relating to her right knee which arose out of and were caused by industrially-related partial permanent disability of her left knee. We reverse the judgment of the district court and remand with instructions to reinstate the decision of the appeals officer who granted the claim.
The appeals officer reversed the State Industrial Insurance System's ("SIIS") denial of the claim and authorized treatment of Ms. Hayes' right knee after concluding that the "claimant's right knee condition is a compensable consequence" of the work-related left knee injury. The appeals officer recognized that part of Ms. Hayes' right knee problems might be related to her gain in weight and to the aging process, but determined, in accordance with NRS 616C.160,[1] that, because of the "causal relationship" between the industrial injury and Ms. Hayes' right knee complaints, Ms. Hayes was entitled to treatment.
SIIS's position in denying this claim is that overlaying NRS 616C.160 is another, superseding statute, NRS 616C.175(2),[2] which prevents Ms. Hayes from being treated for her work-related right knee problems unless she can show that her permanently injured left knee is not only the cause, but the primary cause, of her right knee problems. As pointed out in the district court's order, the appeals officer "rejected SIIS' argument and refused to apply NRS 616C.175." We conclude that the appeals officer was right and that NRS 616C.175 does not apply to the facts of this case. NRS 616C.175(2) was devised to require the greater, "primary cause" burden of proof to be applied only in cases in which a claimant's industrial injuries were aggravated by a non-industrial cause and not to cases in which there was no intervening cause, but merely an extension of the injuries suffered in the industrial accident. NRS 616C.175(2) does not apply in cases such as this one, where the industrial injury manifests itself in the form of symptoms that were not present at the time of the original compensable injury but were "newly developed" manifestations of the original, industrial injury. NRS 616C.160.[3]
*1259 It should be noted early on that Ms. Hayes' right knee disability is an industrial injury. Although it took some time to manifest itself, her right knee injury was part of the industrial accident suffered on September 13, 1979. Just as the 1979 fall caused physical injuries to the left knee which resulted in a joint replacement, it also caused physical injury (albeit, later-manifesting, "newly developed" injury) to her right knee. Ms. Hayes' antalgic (pain-avoiding) limp caused the problems in her right knee. It might just as well have caused hip or back problems, in which case these injuries would have to be defined as being part of the industrial accident and not an "aggravation" of injuries caused by the industrial accident.[4] As discussed below, an aggravation of her left knee injury would be the result of a subsequent, intervening injury or cause that caused her left knee to be put into a worse condition than it was put into by the accident. Let it be understood that Ms. Hayes' right knee problems are the result of the September 13, 1979 accident and not merely an "aggravation" of her left knee injuries.
The appeals officer properly concluded that Ms. Hayes was merely seeking treatment for "newly developed," industrially-related knee problems and that she was, therefore, entitled to coverage under NRS 616C.160 merely by showing that her right knee problems were "causally related" to the work related injury to her left knee. SIIS's contention appears to be that, although Ms. Hayes may have made a prima facie case under NRS 616C.160, under the superseding NRS 616C.175(2), Ms. Hayes is "not entitled to compensation." The superseding statute denies compensation to any claimant who has sustained an industrial accident that is later aggravated by non-industrial causes. NRS 616C.175(2) denies recovery to a claimant who (1) "subsequently aggravates, precipitates or accelerates" an industrial injury, (2) "in a manner that does not arise out of and in the course of his employment" unless (3) the industrial injury, rather than the subsequent, non-industrial aggravation, precipitation or acceleration is shown to be the "primary cause" of the resulting condition for which compensation is sought. In order for the "primary cause" requirement of NRS 616C.175(2) to apply to Ms. Hayes' claim, the industrial injury to her left knee must have been aggravated, precipitated or accelerated by some cause that did "not arise" out of the industrial accident. The main reason that NRS 616C.175(2) does not apply to Ms. Hayes' case is that she does not suffer from an aggravated left knee, she suffers from symptoms to her right knee that were directly caused by the 1979 injury to her left knee.
The appeals officer, in support of the decision to allow the right leg claim, recited the following evidence:
[T]he claimant testified that she had no problem with her right knee prior to her industrial accident on September 13, 1979, when she slipped on the ice, while she was working....
Claimant testified that her left knee injury caused her to depend on her right knee for all of her mobility during the period from 1979 until 1982.
Edna Hayes' treating physician, Dr. Porras' medical reporting indicates that claimant's left knee injury caused her to depend on her right knee for all of her mobility during the period from 1979 until 1982.

*1260 As a result of the abnormal stress on her right knee, she developed degenerative changes in her right knee by August 1992.
Dr. Thompson performed a record review and indicated in June 1995 that Ms. Hayes' current right knee problem is due to a combination of her age, her weight which is not the insurer's responsibility, the preexisting arthritic changes, and the consequences of the industrial left knee condition which caused severe antalgic gait. He believed the insurer would be responsible for 25%.[[5]]
Based upon the foregoing evidence, the hearing officer concluded that the "newly developed" right knee condition was caused by the "original accident" and that the right knee condition was a "compensable consequence" of the original accident. The appeals officer based her decision on NRS 616C.160, and found it unnecessary to consider NRS 616C.175(2).
The district court reversed the holding of the appeals officer on the ground that the appeals officer "should have applied NRS 616C.175," and ruled that Ms. Hayes was required by the statute to "show that her left knee injury of 1979 was the primary cause of the right knee condition she sought treatment for in 1994."
The district court held that "NRS 616C.160[, which permits a claimant to seek treatment for "newly developed" symptoms merely by showing a "causal relationship between the injury or disease for which treatment is being sought" and the original industrial injury,] must be read in conjunction with NRS 616C.175(2)[, which places an additional burden on the claimant to show that the newly developed condition is primarily caused by the original work-related injury.] If these statutes are to be "read in conjunction," they must be read in a way that gives force and effect to both. NRS 616C.175(2) is a superseding and disqualifying statute that applies in special cases in which an "employee is not entitled to compensation." One statute, NRS 616C.160, applies one standard of proof to one kind of situation; the other, NRS 616.175(2), applies another standard of proof in a different kind of situation. The general rule, as set by NRS 616C.160, authorizes continued treatment of the sequelae of an industrial accident in cases in which the claimant can show that new symptoms, "newly developed" complaints, were caused by the "original accident."[6] The exception to the *1261 general rule that a claimant may "seek [] treatment" for work-connected, "newly developed... disease" merely by showing that the new problems are causally related to (caused by) the "original" injury is stated in NRS 616C.175(2), which provides that a claimant "is not entitled to compensation," under certain stated circumstances.
As explained, application of the NRS 616.175(2) exception comes into play only in cases where an industrial accident has been aggravated by subsequent non-industrial events. NRS 616C.175(2) applies only to non-industrial aggravations of industrial accidents. Ms. Hayes' present right knee problems are as much a part of her industrial accident as her left knee problems. She is not claiming that she "aggravate[d]" her left knee injury, nor is there any finding in the record that she did or did not aggravate a previous injury. We have defined "aggravate" in the present context as "to make worse, more serious or more severe." Morrow v. Asamera Minerals, 112 Nev. 1347, 929 P.2d 959 (1996). There is no evidence here that Ms. Hayes' industrial, left knee injury was "aggravate[d]" or that it was in any way made worse or more serious. As stated, the right knee problem is merely a late-developing manifestation of the same, industrial accident. It would not be inaccurate to say that Ms. Hayes suffered an industrial injury to both of her knees because her problems in each knee have a direct work-related causation.
In enacting NRS 616C.175(2), it appears that the legislature was careful to restrict the special, "primary cause" burden to limited kinds of cases, namely, those in which an industrial injury was later aggravated[7] by a non-industrial cause, that is to say, a cause that "does not arise out of and in the course of his employment." If, for example, Ms. Hayes had, off the job, fallen down a flight of stairs and injured her previously-injured left knee, NRS 616C.175(2) would go into effect, and she would have the burden of showing that the first, industrial accident, and not the stair-fall, was the primary cause of right knee complaints for which she was seeking treatment. Ms. Hayes, it is true, was getting older and heavier, as Dr. Thompson pointed out, but the older and heavier Ms. Hayes is still the Ms. Hayes who suffered the original industrial injury to her left knee. When a claimant comes to SIIS with complaints that an industrially-related permanent disability is causing pain and difficulties for which treatment is indicated, SIIS should not be able to send the claimant away, saying: "Your problem is that you are too old and too fat. Even if your industrial injury caused your present problems, age and overweight are your `primary' problems; so we are going to deny your claim." The reason that SIIS should not be able to take this kind of approach to denying claims for "newly developed" manifestations of an industrial accident that are referred to in NRS 616C.160 is that when we get older (and perhaps get heavier) we are a bit more fragile and a bit more likely to seek medical care for our ills. These conditions are not "aggravations" of industrial accidents, but merely conditions that play a part in the effects that the industrial accident may have upon us in the course of time.
The appeals officer was right and the trial judge was wrong. NRS 616C.175(2) does not place a burden above that of NRS 616C.160 upon claimants who continue to suffer from the consequences of an industrial accidentjust because they have gotten older and heavier and perhaps a bit more susceptible to the pains and tribulations that are the concededly direct "compensable consequence" of a previous industrial injury. Ms. Hayes' "original" industrial accident and injury to her left knee were not "subsequently aggravate[d]" by a non-industrial cause, that is to say "in a manner that does not arise out of and in the course of [her] employment." Ms. Hayes was merely suffering complaints that were directly related to her left knee injury. It is difficult to understand how her complaints can be seen in any other light. If Ms. *1262 Hayes had complained of pain in her left knee, which was caused by the original injury, or had complained of pain in her back which was caused by the original injury, her claim probably would have been unhesitatingly accepted. SIIS's mistaken characterization of Ms. Hayes' right knee problem as being an aggravation of her left knee injury is what gave rise to this controversy. Certainly Ms. Hayes cannot be denied compensation for her industrial injury just because her industrial injury has now manifested itself in the opposite knee. NRS 616C.175(2) does not apply to the facts of this case. There is no need to remand this case for further proceedings in which Ms. Hayes must prove that the right knee problems which, admittedly, can be traced directly to her left knee injury, were primarily caused by that industrial injury. The judgment of the district court is, therefore, reversed, and this matter is remanded with instructions that the district court reinstate the decision of the appeals officer.
SHEARING, ROSE, and YOUNG, JJ., concur.
MAUPIN, J., concurring.
I concur in the result, concluding that NRS 616C.175(2) does not apply to preclude recovery on this claim. The appeal officer's decision under NRS 616C.160 was supported by substantial evidence.
NOTES
[1] NRS 616C.160 provides:

NRS 616C.160 Newly developed injury or disease: Inclusion in original claim for compensation; limitation. If, after a claim for compensation is filed pursuant to NRS 616C.020:
1. The injured employee seeks treatment from a physician or chiropractor for a newly developed injury or disease; and
2. The employee's medical records for the injury reported do not include a reference to the injury or disease for which treatment is being sought, or there is no documentation indicating that there was possible exposure to an injury described in paragraph (b) of subsection 2 of NRS 616A.265, the injury or disease for which treatment is being sought must not be considered part of the employee's original claim for compensation unless the physician or chiropractor establishes by medical evidence a causal relationship between the injury or disease for which treatment is being sought and the original accident.
[2] NRS 616C.175(2) provides as follows:

2. An employee is not entitled to compensation pursuant to the provisions of chapters 616A to 616D, inclusive, of NRS if:
(a) He sustains an injury by accident arising out of and in the course of his employment, and
(b) He subsequently aggravates, precipitates or accelerates the injury in a manner that does not arise out of and in the course of his employment, unless the injury described in paragraph (a) is the primary cause of the resulting condition.
[3] We note that these proceedings were brought under NRS 616C.160, the thrust of which is that an "employee seeks treatment" for a "newly developed injury or disease," which is to say, "newly developed" in the sense of newly-manifested problems or symptoms relating to a pre-existing industrial accident or disease. This controversy was prosecuted, decided and appealed on NRS 616C.160 and the "overlaying" statute, NRS 616C.175. A parallel, but different, procedure "to reopen a claim" is provided for in NRS 616C.390. Ms. Hayes did not seek to "reopen" a claim; rather, she sought only "treatment from a physician" for troubles suffered to her right knee which were causally related to an industrial injury to her left knee. We do not find it necessary to involve the court in a discussion of any niceties relating to differences that might exist between reopening a claim and merely seeking treatment for a "newly developed" manifestation of a work-connected injury because, in the present case, we are required to deal only with procedures specifically related to NRS 616C.160.
[4] It should be recognized that Ms. Hayes may be described as a fragile claimant, perhaps more disposed to suffer from her accident than others. Degenerative changes in her left knee were diagnosed at the time of her 1979 accident. She suffers from a similar condition in her right knee. Obviously, this condition cannot be used by SIIS as a basis for denying her claim.
[5] Although the appeals officer's findings stated that Dr. Thompson "believed the insurer would be responsible for 25%," Dr. Thompson's report indicates that there were a number of interacting causes for her right knee complaints, which included the left knee industrial injury, degenerative disease and overweight and commented that "she is getting older" and that "a person might break it up that 25% SIIS copability [sic]; the other factors were not [under] SIIS['] control to do anything aboutthe age and the weight." (Emphasis added.) Apparently, then, Dr. Thompson thought that, since SIIS was not responsible for Ms. Hayes' getting older and gaining weight, "a person" might conclude that SIIS was not responsible and, therefore, not liable to pay for an industrial injury-related problem that the hearing officer concluded was a "compensable consequence of the 1980 industrial" injury. Even if NRS 616C.175(2) applied to the facts of this case, Dr. Thompson did not express an opinion that the right knee problem was primarily caused "in a manner that does not arise out of" employment; rather, he merely suggested that some hypothetical person might see SIIS as being only "25% copable [sic]." Although there is evidence to support a finding that the industrial accident was the primary cause of Ms. Hayes' right knee problems, there is no evidence that Ms. Hayes aggravated in any way her 1979 left knee injury.
[6] In her reply brief, Ms. Hayes gives us the example of a claimant who has an industrial injury to her left knee, and during subsequent treatment of her left knee, her right knee is mistakenly operated. If the claimant were to seek treatment for complications to her mis-operated right knee, the language of NRS 616C.175(2) would not apply. It would not be correct to conclude that the exampled claimant, using the wording of NRS 616C.175(2), "subsequently aggravates, precipitates or accelerates the [original] injury in a manner that did not arise out of and in the course of [her] employment." One reason that the statute would not apply in the example is that the claimant's problems with the operated right knee are part of and a "compensable consequence" of the original left knee injury and cannot possibly be called an aggravation of the left knee injury. The other reason that the statute does not apply is that the right knee problems did "arise out of and in the course of [her] employment." There is no causation unrelated to the industrial accident. As stated above, NRS 616.175(2) relates to subsequent non-industrial aggravations, events which are not applicable to the present case.

Affirmance of the district court's application of NRS 616C.175(2) to the facts of this case would be in violation of NRS 616C.160 It is not necessary to cancel out NRS 616C.160 by applying NRS 616C.175(2). The example given above demonstrates this proposition.
[7] We cannot understand how a past industrial accident could be subsequently "precipitate[d] or accelerate[d]" by a future non-industrial accident; so we center our attention on the word "aggravates" rather than the other words in the three-word series.